1  ROSENDO GONZALEZ (State Bar No. 137352)
   GONZALEZ & ASSOCIATES, P.L.C.
2  530 S. Hewitt Street, Suite 148
   Los Angeles, California 90013
3  Telephone (213) 452-0070
   Facsimile (213) 452-0080
4  E-mail: rossgonzalez@gonzalezplc.com

5  Counsel for David Seror,
   Chapter 7 Trustee

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11  In re                        )  BK. No. 1:15-bk-11350-VK
                                  )     [Chapter 7]
12  PEDRAM SHIRZAD,               )
                                  )
13              Debtor.           )  TRUSTEE'S APPLICATION TO
                                  )  EMPLOY REAL ESTATE BROKER
14                                )  [COLDWELL BANKER & MATCH
                                  )  REALTY USA]; DECLARATIONS OF
15                                )  DAVID SEROR, WILLIAM
                                  )  FRIEDMAN AND BRUCE KURNIK IN
16                                )  SUPPORT THEREOF
                                  )
17                                )  [11 U.S.C. § 327]
                                  )
18                                )  [No Hearing Scheduled
                                  )  Pursuant to Local Bankruptcy
19                                )  9013-1(o)(1)]
                                  )
20  _____)

21  TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY

22  JUDGE, AND TO ALL PARTIES IN INTEREST:

23       Pursuant to Rule 2014-1(b)(1) of the Local Bankruptcy Rules

24  for the Central District of California, David Seror, the Chapter

25  7 trustee is this bankruptcy case (the "Applicant" or "Trustee"),

26  respectfully represents in this application as follows:

27  ///

28  ///

S:\home\3569\3569.010.application to employ broker.wpd
1/2/16 RG                        -1-

1.   This case was commenced by Pedram Shirzad (the "Debtor") with the filing of a voluntary Chapter 7 petition under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on April 17, 2015.

2.   David Seror was appointed as the Chapter 7 trustee.

3.   The initial meeting of creditors was initially scheduled for May 15, 2015.  The meeting has been continued several times and has not been concluded.

4.   In Schedules "A and "D," the Debtor disclosed an ownership interest in a real property commonly described as 14235 Dickens Street, #8, Sherman Oaks, California 91423 (the "Sherman Oaks Property"), with a value of $720,000 and subject to two debts of $552,499.89 owing to Caliber Home Loans and $100,000 owing to Eduard Dneprovsky and Nelli Dneprovskaya from the Ukraine.

5.   In Schedule "B," the Debtor disclosed ownership interest in various personal properties with a collective value of $10,650, including the following: (i) Chase account with a balance of $3,000, (ii) Wells Fargo account with a balance of $200, (iii) jewelry with a value of $150, and (iv) ownership interest in "Pedram Shirzd D.O., Inc." ("PSDO") with only the value of the Chase account.

6.   In Schedule "C," the Debtor claimed exemptions under Section 704 of the California Code of Civil Procedure, including the homestead exemption for the Sherman Oaks Property.

///

///

///

S:\home\3569\3569.010.application to employ broker.wpd
1/2/16 RG                              -2-

7.    In Schedule "D," the Debtor disclosed, in addition to the debt owing for the Sherman Oaks Property, two debts in the amounts of $535,000 and $499,974, owing to Bay View Loan Servicing and Wells Fargo Bank, N.A. ("WFB"), respectively, for a real estate property commonly described as 16027 Dickens Street, Encino, California 91436 (the "Encino Property")[not disclosed in Schedule "A"].

8.    In Schedule "H," the Debtor represented that Cook was a co-debtor for debts owing to Semira Shirzad ("S. Shirzad") and to the Shirzad Family Trust (the "Family Trust").

9.    Apparently, the Debtor transferred his interest in the Encino Property to the Family Trust.

10.    In response to question no. 3 of the Statement of Financial Affairs, the Debtor disclosed various payments, including $4,302.52 to WFB [for the Encino Property] in January, February and March 2015.

11.    In response to question no. 10 of the Statement of Financial Affairs, the Debtor represented that he had not transferred any property to anyone with 2 years nor had he transferred any property to a self-settled trust within 10 years.

12.    On June 17, 2015, the Debtor filed amended Schedules "D" and "F," changing the two debts with respect to the Encino Property from secured to unsecured.

13.    On November 18, 2015, WFB filed a motion seeking relief from the automatic stay with respect to the Encino Property (the "Motion for Relief").

///

///

14.   In the Motion for Relief, WFB asserted that the unpaid debt secured by the Encino Property was $509,679.17 and that it had not received any payment since April 2015.

15.   Using the Debtor's schedules, WFB asserted that the fair market value of the Encino Property was $1,100,000.

16.   While the Trustee filed an opposition to the Motion for Relief, the Debtor and/or the Family Trust did not oppose the Motion for Relief.

17.   At the December 9, 2015 hearing on the Motion for Relief, this Court: (i) concluded that WFB could record a notice of default as to the Encino Property, and (ii) continued the hearing to February 9, 2016, for the Trustee to make a determination whether the estate would seek to market and sell the Encino Property to the extent the bankruptcy estate would be claiming an interest in that property.

18.   The Trustee has made a preliminary determination that the Debtor has made payments with respect to the Encino Property within four years prior to the bankruptcy filing for the benefit of the Family Trust and/or others without the receipt of any reasonably equivalent consideration.  As such, the Trustee believes that the bankruptcy estate may have an interest in the Encino Property as part of efforts to seek to avoid and recover transfers made by the Debtor with respect to the Encino Property.

19.   The Trustee has received a preliminary evaluation for the Encino Property in the amount of $1,199,000 from William Friedman of Coldwell Banker and Bruce Kurnik of Match Realty USA.

///

///

S:\home\3569\3569.010.application to employ broker.wpd
1/2/16 RG                      -4-

20.   As such, the Trustee requires the assistance of a real estate broker to market, list and sell the Encino Property.   In that respect, the Trustee seeks to employ William Friedman of Coldwell Banker and Bruce Kurnik of Match Realty USA (collectively, the "Broker"), as co-real-estate-brokers to represent the estate in this case.   The Encino Property will be initially listed for $1,199,000.

21.   Applicant has previously employed William Friedman of Coldwell Banker in other bankruptcy estates, in the capacity of real estate broker.   Based upon such experience, the Applicant believes that the Broker can perform the services required herein ably and efficiently.

22.   Therefore, the employment of Broker as real estate broker is in the best interests of the estate.   Broker will receive and accept as compensation for its services five (5%) percent of the sales price or such sum as this Court deems reasonable.   Said compensation will be directly paid from the sale proceeds in accordance with Sections 327 and 330 of the Bankruptcy Code.

23.   Therefore, based upon the declarations of William Friedman of Coldwell Banker and of Bruce Kurnik of Match Realty USA, the Applicant is satisfied that no employee of Broker has any connection with the Trustee, Debtor, creditors or any other party in interest in this estate, adverse or otherwise.   The Trustee is further satisfied that Coldwell Banker, Bruce Kurnik and their employees are disinterested persons.

///

///

S:\home\3569\3569.010.application to employ broker.wpd
1/2/16 RG                        -5-

1      24.   To the best of the Trustee's knowledge, no reason for

2  denial of employment exists in this case which could preclude

3  Broker from being employed by the Trustee.

4      **WHEREFORE**, Trustee prays for an order authorizing him to

5  employ William Friedman of Coldwell Banker and Bruce Kurnik of

6  Match Realty USA as co-real-estate-brokers pursuant to Section

7  327 of the Bankruptcy Code with respect to the matters referred

8  to in the within application upon the terms and conditions set

9  forth therein, effective as of December 28, 2015.

10  Dated:  January 4, 2016      GONZALEZ & ASSOCIATES
                                    A Professional Law Corporation

By:_____
          ROSENDO GONZALEZ
          Counsel for David Seror, Chapter 7
          Trustee

1

## DECLARATION OF DAVID SEROR

2

3        I, David Seror, declare:

4        1.    I am the duly qualified and acting Chapter 7 trustee

5   in the above-captioned case.

6        2.    I have read the attached application for the

7   employment of real estate broker and I know the facts represented

8   therein, which are known to me to be true.  If called as a

9   witness, I could and would testify competently thereto.

10       3.    This case was commenced by Pedram Shirzad (the

11  "Debtor") with the filing of a voluntary Chapter 7 petition under

12  the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on

13  April 17, 2015.

14       4.    William Friedman of Coldwell Banker has previously

15  acted and/or is presently acting as my real estate broker in

16  other unrelated cases in my role as the Chapter 7 trustee.

17       5.    Based on the attached declarations of William Friedman

18  of Coldwell Banker and Bruce Kurnik of Match Realty USA, I am

19  satisfied that they are disinterested parties capable of

20  rendering the professional services required by the estate in

21  this case.

22       6.    I believe it is in the best interest of the bankruptcy

23  estate to employ co-real estate agents in this case to maximize

24  the estate's marketing and selling of property of the estate.

25  ///

26  ///

27  ///

28  ///

S:\home\3569\3569.010.application to employ broker.wpd
1/2/16 RG                          -7-

1        I declare under penalty of perjury under the laws of the

2    United States of America that the foregoing is true and correct.

3        Executed this _31_ day of December, 2015, at Woodland Hills,

4    California.

5

6                            DAVID SEROR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF WILLIAM FRIEDMAN

I, William Friedman, declare as follows:

1.    I am a licensed real estate agent employed and authorized to make this declaration.  I am employed by Coldwell Banker located at 8840 S. Sepulveda Blvd., Los Angeles, California 90045, telephone (310) 305-4207.  I have personal knowledge of the following and if called upon to testify I could and would do so competently.

2.    David Seror (the "Trustee"), the Chapter 7 trustee for the bankruptcy estate of Pedram Shirzd, the debtor in this bankruptcy case (the "Debtor"), has requested that Coldwell Banker act as co-real estate broker (with Bruce Kurnik of Match Realty USA), with myself as agent, to secure prospective buyers for the real property commonly described as 16027 Dickens Street, Encino, California 91436 (the "Encino Property").

3.    The real services provided will include marketing, listing, and selling the Encino Property pursuant to and under the terms of the Listing Agreement, a copy of which is attached as Exhibit "1" hereto.

4.    Coldwell Banker and I are experienced generally in the real estate market in and around Southern California, and have extensive experience representing Bankruptcy Trustees in connection with the sale of Bankruptcy estate properties.  I have successfully sold real estate property in California for thirty-one (31) years.  A true and correct copy of my resume is attached as Exhibit "2" hereto.

///

5. Since at least 1985, I have been employed by more than 30 bankruptcy trustees in the Central District of California. In dealing with the trustees, I have evaluated thousands of properties, and I have listed and co-listed hundreds of properties for sale on behalf of trustees for the benefit of the estate.

6. In the majority of cases, the trustees come to me and request my assistance because of my familiarity with sales through bankruptcy and my resources and contacts in the local areas through Coldwell. When a trustee is first appointed and wishes to evaluate real property, I am called upon to value the property, obtain lien and title information, as well as the tax basis of the property to assist the trustee in determining the potential tax consequences from a sale.

7. In many instances, after I advise the trustee about the value of the property, the trustee determines it to be unworthy of administration. However, once the trustee determines that there is sufficient equity in the property to justify its sale, trustees then ask me to handle the listing and marketing.

8. I then evaluate whether Coldwell's presence in the locality justifies working through a local Coldwell agent or if it is in the best interest of the estate that I locate a different broker in the immediate area where the property is located and arrange for the co-listing of the property between the two brokers.

9. More than half the time, I recommend that the property be co-listed, even though, in that event, Coldwell's commission, which is subject to Court approval, would be less.

1    10.  As a result, I frequently co-list properties in order

2    to provide the best service to the trustees by locating competent

3    and respected real estate agents in the specific area where the

4    real property is located.

5    11.  Their specific knowledge of a particular area usually

6    results in an appropriate listing price and, generally, a

7    reasonably quick sale time.  I have no personal relationship with

8    the proposed co-listing broker.

9    12.  When I co-list properties, I perform the following

10   services:

11   (A)  I interview numerous agents inside and outside

12   Coldwell, and advise the trustee as to who I would recommend to

13   co-list the property.  The agent who I recommend must be familiar

14   with the area and a top producer in that area.  Generally the co-

15   listing agent has no familiarity with the bankruptcy process.  I

16   also get multiple opinions of value on the property, with which

17   the local brokers oftentimes already have some familiarity

18   because the property may have been marketed recently by the

19   debtor.

20   (B)  I prepare the listing agreement and assist in the

21   preparation of the employment application, including my

22   declaration regarding disinterestedness to be submitted to the

23   Bankruptcy Court.  I discuss the bankruptcy employment, sale,

24   lien and compensation issues with my co-agents and obtain their

25   resume for the employment application.

26   (C)  I list the property in the Westside Multiple Listing

27   Service and on Coldwellbanker.com and realtor.com.  If the co-

28   agent is with a different broker, they will list and advertise

the property in their own media, thereby giving double exposure to the property.

(D)  I oftentimes spend many hours interfacing with debtors' counsel to arrange for access to, caravans and inspections of the property.

(E)  I confer with the trustee's office to follow up on potential buyers that may have contacted the trustee's office directly.

(F)  I interface with the buyer's real estate broker and explain the process and procedures involved with purchasing property through bankruptcy, including the overbid process.

(G)  When offers are written, they are forwarded by the buyer's agent to me, and I forward those offers to the trustee and/or counsel with my recommendation on how to respond.  In the event of multiple offers, which has been happening more frequently in light of present real estate conditions, I recommend a strategy to attempt to maximize the price in light of the subsequent over-bid process.

(H)  I interface with the trustee and counsel and prepare lengthy and detailed counter-offers that are specifically customized to protect the trustee and the bankruptcy estate.

(I)  I answer numerous questions by prospective buyers and overbidders regarding the bankruptcy process, including issues with respect to the overbid process and removal of liens.

(J)  I interface with the escrow officers, title officers, and attorneys for the title companies to open escrow, order preliminary title reports and obtain beneficiary statements so that loans can be paid off promptly.

1  (K)  I advise the co-listing agent on the procedures for

2  advertising the properties once an offer is accepted pending the

3  approval of the sale subject to overbid and appropriate notations

4  in the multiple listing service.

5  (L)  I assist the trustee in conducting the overbid

6  auctions if requested to do so.

7  (M)  Once the sale is approved by the Bankruptcy Court, I

8  follow up with the title company and handle non-legal issues that

9  arise to do my best to ensure that the sales close smoothly as

10  possible.

11  (N)  During this process, trustees often ask me to sign

12  declarations to present evidence on valuations and the status of

13  marketing efforts in support of cash collateral motions and/or to

14  oppose motions for relief from stay and/or to compel abandonment,

15  as the estates often do not have the money to pay for an outside

16  appraisal.  I do not ask for compensation for these extra

17  services.

18  13.  The co-listing agent performs the following services:

19  (A)  List the property in their local multiple listing

20  service;

21  (B)  Show the property to prospective purchasers and

22  brokers and make himself/herself available for all home

23  inspections and appraisals; and

24  (C)  Arrange for local advertising.

25  14.  When I co-list a property, such as the Property here,

26  the total requested commission is five percent (5%) of the

27  purchase price, divided as follows: a 2½ % listing commission is

28  paid equally between Coldwell and Bruce Kurnik of Match Realty

1  USA; and a 2½ % commission is paid to the broker who procures the

2  buyer, if any.

3      15.  I have read the foregoing Application of the Trustee

4  seeking authority to employ me and believe the statements set

5  forth therein to be true and correct.

6      16.  The Encino Property will be co-listed for sale with

7  Bruce Kurnik of Match Realty USA.  The proposed listing price is

8  $1,199,000 ("Listing Price").  Bruce Kurnik of Match Realty USA

9  and I have agreed to accept as our complete compensation a

10  collective five percent (5%) of the Listing Price (or if a

11  purchase agreement is entered into, of the purchase price) as a

12  commission to be shared with the buyer's broker and understand

13  that the Court has the power to fix some other amount of

14  compensation under 11 U.S.C. §§ 327 and 330.

15      12.  I am a disinterested person as defined in 11 U.S.C. §

16  101(14).  I am not associated or affiliated with the Debtor,

17  their affiliates, their creditors, or any other party in interest

18  or their respective attorneys or accountants.  I have no pre-

19  petition claim against the Debtor.

20      13.  I have not and do not expect to receive a retainer in

21  this matter.

22      14.  I am familiar with the Bankruptcy Code, Bankruptcy

23  Rules and Local Rules, and will comply with them.

24      15.  The bankruptcy estate in this case receives a

25  substantial benefit by my co-listing of the Property.  The

26  Property will be advertised both in the San Fernando Valley and

27  in the Los Angeles area.  Additionally, my knowledge and

28  expertise in the sale of properties through bankruptcy will

S:\home\3569\3569.010.application to employ broker.wpd
1/2/16 RG                                    -14-

1  assist the trustee in promoting the Encino Property and increase

2  the likelihood that an overbid will be received.   In the past

3  several years, I have generated substantial interest in the

4  properties I have co-listed and I have obtained overbids on

5  dozens of bankruptcy sales.

6       I declare under penalty of perjury under the laws of the

7  United States of America, that the foregoing is true and correct.

8       Executed this $31$ day of December, 2015, at Los Angeles,

9  California.

10  _____

WILLIAM FRIEDMAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF BRUCE KURNIK

2

3       I, Bruce Kurnik, declare as follows:

4       1.    I am a licensed real estate realtor employed and

5   authorized to make this declaration.  I am employed by Match

6   Realty USA located at 11026 Ventura Blvd., Suite 1, Studio City,

7   California 91604; phone number is 818-917-7111; e-mail is

8   brucerealestate@aol.com.  I have personal knowledge of the

9   following and if called upon to testify I could and would do so

10  competently.

11      2.    David Seror (the "Trustee"), the Chapter 7 trustee

12  for the bankruptcy estate of Pedram Shirzd, the debtor in this

13  bankruptcy case (the "Debtor"), has requested that Coldwell

14  Banker act as co-real estate broker (with William Friedman of

15  Coldwell Banker), with myself as agent, to secure prospective

16  buyers for the real property commonly described as 16027 Dickens

17  Street, Encino, California 91436 (the "Encino Property").

18      3.    The real services provided will include marketing,

19  listing, and selling the Encino Property pursuant to and under

20  the terms of the Listing Agreement, a copy of which is attached

21  as Exhibit "1" hereto.

22      4.    I am experienced generally in the real estate market

23  in and around Southern California.  A true and correct copy of my

24  resume is attached as Exhibit "3" hereto.

25      5.    To the best of my knowledge, neither I or Bruce Kurnik

26  Realty and its employees don not have any connection with the

27  Debtor, insiders of the Debtor, creditors, or any other party in

28  interest in this estate, adverse or otherwise, and their

S:\home\3569\3569.010.application to employ broker.wpd
1/2/16 RG                         -16-

1  respective attorneys and accountants, or any person employed in

2  the Office of the United States Trustee.

3     6.    Match Realty USA and its employees are not

4  creditors, equity holders or insider of the Debtor.

5     7.    Match Realty USA and its employees are not

6  and were not investment bankers for any outstanding security of

7  the Debtor.

8     8.    Match Realty USA and its employees are not

9  and were not, within three (3) years before the date of the

10  filing of the Debtor's petition in this case, a director,

11  officer, or employee of the Debtor or of any investment banker

12  for any security of the Debtor.

13     9.    Match Realty USA and its employees do not

14  hold or represent any interest materially adverse to the interest

15  of the estate or of any class of creditors or equity security

16  holders, by reason of any direct or indirect relationship to,

17  connection with, or interest in, the Debtor or an investment

18  banker for any security of the Debtor, or for any other reason.

19     10.    Match Realty USA and its employees are not a

20  relative or employee of the United States Trustee or of a

21  Bankruptcy Judge.

22     11.    Match Realty USA and its employees do not

23  have any connection with any insider of the Debtor, or any

24  insider of an insider of the Debtor nor any pre-petition claim

25  against the Debtor or the estate of any kind.

26     12.    The Property will be co-listed for sale with William

27  Friedman of Coldwell Banker ("Friedman").    The proposed listing

28  price is $1,199,000 ("Listing Price").    Friedman and I have

1    agreed to accept as our complete compensation a collective five

2    percent (5%) of the Listing Price (or if a purchase agreement is

3    entered into, of the purchase price) as a commission to be shared

4    with the buyer's broker and understand that the Court has the

5    power to fix some other amount of compensation under 11 U.S.C. §§

6    327 and 330.

7         I declare under penalty of perjury under the laws of the

8    United States of America, that the foregoing is true and correct.

9         Executed this 31st day of December, 2015, at Studio City,

10   California.

11                              _____

12                                   BRUCE KURNIK

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "1"



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 12/15)

Date Prepared: _12/29/2015_                    *David Soror , Chapter 7 Trustee*
1. **EXCLUSIVE RIGHT TO SELL:**
hereby employs and grants _____ ("Seller")
_____Coldwell Banker& Match Realty_____ ("Broker")
beginning (date) _____December 29, 2015_____ and ending at 11:59 P.M. on date) ____May 23, 2016____ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as _16027 Dickens_ St.
_____, situated in _____ Encino _____ (City),
_Los Angeles_ (County), California, _91436_ (Zip Code), Assessor's Parcel No. _2283011022_ ("Property").
☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.
2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _One Million, One Hundred Ninety-Nine Thousand_
   _____ Dollars ($ _1,199_000.00 _____ ).
   B. Listing Terms: _SUBJECT TO BANKRUPTCY COURT APPROVAL;PROPERTY SOLD "AS-IS"._
   _____.

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and
   may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _6.000_ percent
   of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____
   AND _____, as follows:
   (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready,
   willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the
   Buyer completes the transaction or is prevented from doing so by Seller. Broker is entitled to compensation whether any
   escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; unless otherwise agreed, or (b) after any cancellation of this
   Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to
   anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during
   the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker
   submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however,
   shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any
   extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise
   transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have
   been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or
   otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first
   deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____.
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS")
   by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ percent of the
   purchase price, or ☐ $ _____.
   (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may
   submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property
   involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) ~~Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows:~~
   _____
   (2) ~~Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the~~
   ~~Property is transferred to any of the following individuals or entities:~~
   (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is
   not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.
4. A. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings
   that are attached to the Property are included, and personal property items are excluded, from the purchase price.
   **ADDITIONAL ITEMS EXCLUDED:** _____
   **ADDITIONAL ITEMS INCLUDED:** _____

© 2015, California Association of REALTORS®, Inc.                    Seller's Initials ( _____ ) ( _____ )
**RLA REVISED 12/15 (PAGE 1 OF 5)**
**RESIDENTIAL LISTING AGREEMENT · EXCLUSIVE (RLA PAGE 1 OF 5)**

MATCH REALTY USA, 11816 VENTURA BLVD. SUITE #J STUDIO CITY, CA 91604                    Phone: 818-917-7111    Fax: 1-866-735-2778    16027 Dickens St
Brner Kornik                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Property Address: _16027 Dickens St., Encino,  91436_                                                              Date: _12/29/2015_

Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

B.   (1) **Leased Items:** The following items are leased:
☐ Solar power system   ☐ Alarm system   ☐ Propane tank .   ☐ Water Softener
☐ Other _____

(2) **Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
☐ Other _____

Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5.  **MULTIPLE LISTING SERVICE:**

A.  Broker is a participant/subscriber to _____CLAW/CARETS_____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

| Seller's Initials ( _____ )( X _____ ) | | Broker's/agent's Initials ( _____ X _____ ) |
| --- | --- | --- |

B.  MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

Seller's Initials ( _____ ) ( _____ )

**RLA REVISED 12/15 (PAGE 2 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**

Property Address: _16027 Dickens St., Encino,  91436_        Date: _12/29/2015_

C. MLS rules allow MLS data to be made available by the MLS to additional internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the internet as permitted by (or in accordance with) the MLS is as follows:

(1) Property Availability: Seller can instruct Broker to have the MLS not display the Property on the internet.

(2) Property Address: Seller can instruct Broker to have the MLS not display the Property address on the internet.
Seller understands that the above opt-outs would mean consumers searching for listings on the internet may not see the Property or Property's address in response to their search.

(3) Feature Opt-Outs: Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other internet sites.

(a) Comments And Reviews: The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(b) Automated Estimate Of Value: The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain internet features as provided by C.A.R. Form SELI or the local equivalent form.

6. SELLER REPRESENTATIONS: ~~Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of~~ Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. BROKER'S AND SELLER'S DUTIES:

A. Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

B. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 4F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

C. Investigations and Reports: Seller agrees, within 5 (or ___) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____

D. ~~Seller~~ ────────────────────────────────────

8. DEPOSIT: Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9. AGENCY RELATIONSHIPS:

A. Disclosure: The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

B. Seller Representation: Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

C. Possible Dual Agency With Buyer: Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

D. Confirmation: If the Property includes residential property with one-to-four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

E. Potentially Competing Sellers and Buyers: Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

Seller's Initials ( ____ ) ( ____ )

RLA REVISED 12/15 (PAGE 3 OF 5)



Property Address: *16027 Dickens St., Encino,   91436*                                                        Date: *12/29/2015*

**10. SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

**11. PHOTOGRAPHS AND INTERNET ADVERTISING:**

   A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

   B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other Images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take Images who do not have access to or have not read any limiting instruction in the MLS or who take Images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

**16. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TAL)

_____
_____
_____
_____
_____
_____
_____

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.

**18. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**19. DISPUTE RESOLUTION:**

   A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 19C.

   B. **ARBITRATION OF DISPUTES:** Seller and Broker agree that any dispute or claim in law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 19C.

Seller's Initials ( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    16027 Dickens St

Property Address: _16027 Dickens St., Encino,  91436_        Date: _12/29/2015_

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Seller's Initials _____ / _____ | Broker's/agent's Initials _____ / _____ |
|---|---|

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS: The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.

20. ENTIRE AGREEMENT: All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. OWNERSHIP, TITLE AND AUTHORITY: Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:_____

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller _____    Date _12/29/2015_
     _David Seror, Chapter 7 Trustee_
Address _16027 Dickens St._    City _Encino_    State _CA_    Zip _91436_
Telephone _____ Fax _____ E-mail _____

Seller _____    Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Firm) _Coldwell Banker & Match Realty_    Cal BRE Lic. # _00920373_
Address _11026 Ventura  Blvd.Suite B #_    City _Studio City_    State _CA_    Zip _91604_
By _____ Tel. _(818)917-7111_   E-mail _brucorealestate@aol.com_   CalBRE Lic.# _00920373_ Date _12/29/2015_
     _Bill Friedman & Bruce Kurnik_
By _____ Tel. _____ E-mail _____ CalBRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RLA REVISED 12/15 (PAGE 5 of 5)

| Reviewed by _____ Date _____ |
|---|

**RESIDENTIAL LISTING AGREEMENT -EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      16027 Dickens St



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 12/15)

Date Prepared: _12/29/2015_

1. **EXCLUSIVE RIGHT TO SELL:** _____ *David Seror , Chapter 7 Trustee* _____
   hereby employs and grants _____ *Coldwell Banker& Match Realty* _____ ("Seller")
   beginning (date) _**December 29, 2015**_ and ending at 11:59 P.M. on (date) _**May 23, 2016**_ ("Listing Period")
   the exclusive and irrevocable right to sell or exchange the real property described as _16027 Dickens St._
   _____, situated in _____ *Encino* _____ (City),
   _____ *Los Angeles* _____ (County), California, _91436_ (Zip Code), Assessor's Parcel No. _2283011022_ ("Property").
   ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _One Million, One Hundred Ninety-Nine Thousand_
   _____ Dollars ($ _1,199,000.00_ ).
   B. _Listing Terms:_ _SUBJECT TO BANKRUPTCY COURT APPROVAL;PROPERTY SOLD "AS-IS"._

3. **COMPENSATION TO BROKER:**
   Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and
   may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent
      of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____
      AND _____ , as follows:
      **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready,
         willing, and able buyer) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the
         Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any
         escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      **OR (2)** If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this
         Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to
         anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during
         the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker
         submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however,
         shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any
         extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
      **OR (3)** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise
         transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have
      been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or
      otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first
      deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker:
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      **(1)** Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS")
         by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ percent of the
         purchase price or ☐ $ _____ .
      **(2)** Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may
      submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property
      involving Seller and a buyer, Prospective Buyer or other transferee.
   F. **(1)** Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property,
         unless specified as follows: _____
      **(2)** Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the
         Property is transferred to any of the following individuals or entities: _____
      **(3)** If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is
         not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

4. A. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings
      that are attached to the Property are included, and personal property items are excluded, from the purchase price.
      ADDITIONAL ITEMS EXCLUDED: _____
      ADDITIONAL ITEMS INCLUDED: _____

© 2015, California Association of REALTORS®, Inc.
**RLA REVISED 12/15 (PAGE 1 OF 5)**

Seller's Initials ( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.** **(1) Leased Items:** The following items are leased:
  ☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
  ☐ Other _____

  **(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
  ☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
  ☐ Other _____
  Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.  MULTIPLE LISTING SERVICE:**
**A.** Broker is a participant/subscriber to _____**CLAW/CARETS**_____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

| Seller's Initials ( _____ )( _____ ) | Broker's/agent's Initials ( _____ )( _____ ) |

---

**B.** MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
  ☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

Seller's Initials ( _____ ) ( _____ )

**RLA REVISED 12/15 (PAGE 2 OF 5)**



Property Address: _16027 Dickens St., Encino,  91436_        Date: _12/29/2015_

**C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:
(1) Property Availability: Seller can instruct Broker to have the MLS not display the Property on the Internet.
(2) Property Address: Seller can instruct Broker to have the MLS not display the Property address on the Internet. Seller understands that the above opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
(3) Feature Opt-Outs: Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
(a) Comments And Reviews: The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
(b) Automated Estimate Of Value: The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**6. SELLER REPRESENTATIONS:** ~~Seller represents that, unless otherwise specified in writing, Seller is unaware of (i) any Notice of Default recorded against the Property;~~ (ii) any delinquent amounts due under ~~any loan~~ secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency ~~or similar proceeding~~ affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation ~~or other pending or threatened action~~ that affects or may affect the Property or Seller's ability to transfer it; and ~~(v) any~~ current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7. BROKER'S AND SELLER'S DUTIES:**
**A.** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
**B.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 4F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.
**C.** Investigations and Reports: Seller agrees, within 5 (or ____) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____
**D.** ~~Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose.~~

**8. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9. AGENCY RELATIONSHIPS:**
**A.** Disclosure: The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
**B.** Seller Representation: Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
**C.** Possible Dual Agency With Buyer: Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
**D.** Confirmation: If the Property includes residential property with one-to-four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.
**E.** Potentially Competing Sellers and Buyers: Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**RLA REVISED 12/15 (PAGE 3 OF 5)**      Seller's Initials ( _____ ) ( _____ )

Property Address: **_16027 Dickens St., Encino, CA 91436_**   Date: **_12/29/2015_**

**10. SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

**11. PHOTOGRAPHS AND INTERNET ADVERTISING:**
   **A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.
   **B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

**16. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ Trust Advisory (C.A.R. Form TAL)

_____

_____

_____

_____

_____

_____

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**18. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**19. DISPUTE RESOLUTION:**
   **A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 19C.
   **B. ARBITRATION OF DISPUTES:**
   **Seller and Broker agree that any dispute or claim in law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 19C.**

Seller's Initials ( _____ ) ( _____ )

**RLA REVISED 12/15 (PAGE 4 OF 5)**

Property Address: **16027 Dickens St., Encino, 91436**                                         Date: **12/29/2015**

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

|  | Seller's Initials _____ / _____ | Broker's/agent's Initials _____ / _____ |
|---|---|---|

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:_____
_____

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____     Date _____
    **David Seror, Chapter 7 Trustee**
Address **16027 Dickens St.** _____ City **Encino** _____ State **CA** ____ Zip **91436**
Telephone _____ Fax _____ E-mail _____

Seller _____     Date _____

Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Firm) **Coldwell Banker & Match Realty** _____ Cal BRE Lic. # **00920373**
Address **11026 Ventura  Blvd. Suite #** _____ City **Studio City** _____ State **CA** ____ Zip **91604**
By _____ Tel. **(818) 917-7111** E-mail **brucerealestate@aol.com** CalBRE Lic.# **00920313** Date **12/29/2015**
    **Bill Friedman & Bruce Kurnik**
By _____ Tel. _____ E-mail _____ CalBRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|



**RLA REVISED 12/15 (PAGE 5 OF 5)**
**RESIDENTIAL LISTING AGREEMENT -EXCLUSIVE (RLA PAGE 5 OF 5)**

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

David Seror, solely in the capacity as the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Pedram Shirzad ("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker and Match Realty("Broker") the exclusive right to negotiate a sale of the real property commonly described as 16027 Dickens Street, Encino, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1.   <u>Addendum</u>.   This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2.   <u>No Liability</u>.   The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3.   <u>Termination</u>.   The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4.   <u>Abandonment</u>.   The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest.   In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5.   <u>Conditions of Sale</u>.   The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

124805.1   9937176A

a.    The  Trustee  is  selling  the  Property  in  the capacity  as  the  Trustee  and  not  in  the  Trustee's  personal capacity,  and  no  liability  or  obligations  shall  accrue  to  the Trustee personally as a result of any sale.

b.    If  for  any  reason,  or  no  reason  whatsoever,  the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or   warranties   whatsoever,   including   without   limitation representations  or  warranties  as  to  title,  oil  and  mineral rights,  city  or  government  agency  notifications  regarding  work to  be  done,  marketability  of  title,  ownership,  physical condition,  compliance  with  state,  city  or  federal  statutes, codes,  ordinances,  or  regulations,  geological  stability,  zoning, suitability  for  improvement,  and  fire  insurance  policies  to cover  any  improvements  on  the  Property,  nor  any  assurances regarding the subdividability of the Property.

d.    The  sale  of  the  Property  is  subject  to  Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the  United  States  Trustee,  all  creditors,  and  all  parties  in interest  as  required  by  the  Bankruptcy  Code,  Federal  Rules  of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The sale is subject to overbids.

f.    The  purchaser  shall,  at  the  purchaser's  sole expense,  acquire  any  and  all  insurance  policies  that  the purchaser desires to cover the Property.  The Trustee does not agree  to  acquire  or  transfer  any  insurance  policies  to  the purchaser.

g.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.    All  escrow  fees  shall  be  shared  and  paid  on  a 50/50 basis by the Trustee and the purchaser.

i.    The  purchaser  shall,  at  the  purchaser's  sole expense, install all smoke detectors, if any, as may be required by state or local law.  The Trustee is not required to deliver

to the purchaser a written statement of compliance with any applicable state and local law.

        j.   The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

        k.   If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

        l.   Any sale is subject to the following conditions being satisfied before the close of escrow:

        (1)   the Trustee must prevail with respect to any objections to the proposed sale; and

        (2)   the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

        m.   The Property is being sold subject to:

        (1)   All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

        (2)   Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.   Title, however, is to be transferred free of secured claims of record.

    6.   <u>Payment of Commission</u>.   The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.   The payment of the commission is subject to prior approval of the Bankruptcy Court.

    7.   <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>.   The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

124805.1   5937176A                3

8.   <u>Entire Agreement</u>. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization is not contrary to the terms and conditions herein, constitute the entire contract between the parties. All prior agreements between the parties are incorporated into this agreement. Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.   <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization. This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

# Exhibit "2"



WESTCHESTER/PLAYA VISTA



William Friedman

8840 S. SEPULVEDA BLVD.
LOS ANGELES, CA 90045
BUS. (424) 702-3000
FAX (424) 702-3010

**RESIDENTIAL BROKERAGE**

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 30 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

**Trustees:**
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

**Lenders:**
Countrywide Home Loans
Federal Home Loan Mortgage Corporation
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank

Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

**Receivers:**
Adrian Stern
Samuel R. Biggs
David L. Ray

# Exhibit "3"

**BRUCE KURNIK**
**BRUCE KURNIK REALTY**
**CAL BRE LIC # 00920373**
**DBA MATCH REALTY USA**
**11026 VENTURA BLVD.SUITE #1**
**STUDIO CITY, CA 91604**
**818-917-7111 CELL/TEXT**
**866-735-2771 FAX**
**brucerealestate@aol.com**

PROFESSIONAL
EXPERIENCE

REAL ESTATE BROKER/OWNER BRUCE KURNIK REALTY DBA
MATCH REALTY USA 2007-PRESENT
REAL ESTATE BROKER ASSOCIATE COLDWELL BANKER JULY 2001-
FEBRUARY 2007
REAL ESTATE BROKER/OWNER BRUCE KURNIK REALTY JUNE 1996-
FEBRUARY 2001
REAL ESTATE BROKER ASSOCIATE RE/MAX ESTATE PROPERTIES
JANUARY 1990-JUNE 1996
REAL ESTATE SALES ASSOCIATE JON DOUGLAS COMPANY APRIL
1989-JANUARY 1990.
MANAGEMENT AAMES HOME LOAN MARCH 1986-APRIL 1989

EDUCATION

LUMBLEAU REAL ESTATE SCHOOL
     REAL ESTATE SALES PERSONS LICENSE MARCH 1986
     REAL ESTATE BROKER LICENSE JANUARY 1990

CALIFORNIA STATE UNIVERSITY NORTHRIDGE, BUSINESS
MANAGEMENT, MARKETING, REAL ESTATE ECONOMICS, FINANCE

LOS ANGELES VALLEY COLLEGE
     ASSOCIATE DEGREE BUSINESS MANAGEMENT 1980
     MEMBER TAU EPSILON HONOR SOCIETY

PROFESSIONAL
AFFILATIONS

BEVERLY HILLS GREATER LOS ANGELES ASSOCIATION OF REALTORS
COMBINED LOS ANGELES WESTSIDE MLS   (CLAW)
CALIFORNIA REAL ESTATE TECHNOLOGY SERVICES (CARETS)
CALIFORNIA ASSOCIATION OF REALTORS
NATIONAL ASSOCIATION OF REALTORS

REFERENCES

AVAILABLE UPON REQUEST

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**530 S. Hewitt Street #148, Los Angeles, CA 90013**

A true and correct copy of the foregoing document entitled (specify):  **TRUSTEE'S APPLICATION TO EMPLOY REAL ESTATE BROKER [COLDWELL BANKER & MATCH REALTY USA]; DECLARATIONS OF DAVID SEROR, WILLIAM FRIEDMAN AND BRUCE KURNIK IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **January 4, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Leslie A Cohen   leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com

- Rosendo Gonzalez   rossgonzalez@gonzalezplc.com, rgonzalezatty@ecf.epiqsystems.com;itran@gonzalezplc.com

- Edward G Schloss   egs2@ix.netcom.com

- David Seror (TR)   mtzeng@ebg-law.com, C133@ecfcbis.com

- United States Trustee (SV)   ustpregion16.wh.ecf@usdoj.gov

- Robert P Zahradka   ecfcacb@aldridgepite.com, RPZ@ecf.inforuptcy.com;rzahradka@aldridgepite.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) **January 4, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**SEE ATTACHED LIST**
☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 4, 2016 | Ian Tran | /s/ Ian Tran |
|---|---|---|
| Date | Printed Name | Signature |

S:\home\3569\3569.010.application to employ broker.wpd
1/4/16 RG                                    -19-

1    **ADDITIONAL SERVICE INFORMATION**

2    **VIA U.S. MAIL:**

3    **Debtor**
     Pedram Shirzad
4    14235 Dickens Street, #8
     Sherman Oaks, CA 91423
5
     **U.S. Bankruptcy Judge**
6    The Honorable Victoria S. Kaufman
     US Bankruptcy Court
7    Cental District of California
     21041 Burbank Blvd., Suite 354
8    Woodland Hills, CA 91367

9    **Trustee's Proposed Real Estate Broker**
     William Friedman
10   Coldwell Banker
     8840 S. Sepulveda Blvd.
11   Los Angeles, CA 90045

12   **Trustee's Proposed Real Estate Broker**
     Bruce Kurnik
13   Match Realty USA
     11026 Ventura Blvd., Suite 1
14   Studio City, CA 91604

15

16      Leslie McAfee
        27525 Newhall Ranch RD Ste 8
17      Valencia, CA 91355

18

19

20

21

22

23

24

25

26

27

28

S:\home\3569\3569.010.application to employ broker.wpd
1/4/16 RG                    -20-